## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RANDY HAMILTON, | ) | Case No. 1:20-CV-02069-DAP |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL |
| ED SHELDON, Warden, | ) | ARMSTRONG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Petitioner, Randy Hamilton ("Mr. Hamilton"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). Mr. Hamilton is serving a sentence of 15 years and six months for: (1) one second-degree felony count of felonious assault with a firearm specification in violation of R.C. § 2903.11(A)(1); (2) one third-degree felony count of having weapons while under disability in violation of R.C. § 2923.13(A)(3); and (3) one fourth-degree felony count of receiving stolen property with a firearm specification in violation of R.C. § 2913.51(A).

Mr. Hamilton asserts a single ground for relief, arguing that he received the ineffective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution. Respondent, Warden Kenneth Black ("Warden"),[1] filed an answer/return of writ on April 12, 2021. (ECF No. 8). Mr. Hamilton filed a traverse on May 20, 2021. (ECF No. 10).

This matter was referred to me on September 2, 2022 under Local Rule 72.2 to prepare

---

[1] In his answer/return of writ, Warden Black states that he is currently the warden at Richland Correctional Institution, where Mr. Hamilton is incarcerated, rather than Warden Ed Sheldon, the warden named in the case caption. The parties have continued to use Warden Sheldon in the case caption, and I will therefore do the same.

a report and recommendation on Mr. Hamilton's petition. (*See* ECF non-document entry dated September 2, 2022). For the foregoing reasons, I recommend that Mr. Hamilton's petition be DENIED. I further recommend that this Court not grant Mr. Hamilton a certificate of appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Ninth District summarized the facts as follows:

> {¶2}  In October of 2016, Mr. Hamilton and his live-in girlfriend ("M.R.") invited some friends over to their North Ridgeville home to watch a Cleveland Indians' World Series game. Both Mr. Hamilton and M.R. had been drinking that night and, according to Mr. Hamilton, the two began arguing over cleaning up the house after their friends left. M.R. eventually slammed shut and locked her bedroom door, which Mr. Hamilton broke open with his shoulder. According to Mr. Hamilton, M.R. aimed a shotgun at him, so he grabbed it from her, pushed her away, and attempted to uncock the weapon. The gun went off, hitting M.R. in the chest and killing her. Mr. Hamilton called 911 and waited for police to arrive.

(ECF No. 8-2, Exhibit 17); *State v. Hamilton*, No. 17CA011238, 2019 WL 2097489, 2019-Ohio-1829 (9th Dist. May 13, 2019).

## III.    PROCEDURAL HISTORY

### A. <u>State Court Conviction</u>

On November 23, 2016, Mr. Hamilton was indicted in the Lorain County Court of Common Pleas on the following offenses: (1) one unspecified-felony count of murder with a firearm specification in violation of R.C. § 2903.02(A); (2) one unspecified-felony count of

murder with a firearm specification in violation of R.C. § 2903.02(B); (3) one second-degree felony count of felonious assault with a firearm specification in violation of R.C. § 2903.11(A)(1); (4) one second-degree felony count of felonious assault with a firearm specification in violation of R.C.§ 2903.11(A)(2); (5) one third-degree felony count of having weapons while under disability in violation of R.C. § 2923.13(A)(3); and (6) one fourth-degree felony count of receiving stolen property with a firearm specification in violation of R.C. § 2923.51(A). (ECF No. 8-2, Exhibit 1). On December 1, 2016, Mr. Hamilton pled not guilty to all charges. (ECF No. 8-2, Exhibit 2).

On March 8, 2017, Mr. Hamilton, through counsel, filed a motion for a transcript of his statements to law enforcement at the State's expense. (ECF No. 8-2, Exhibit 3). On March 14, 2017, the trial court granted Mr. Hamilton's motion. (ECF No. 8-2, Exhibit 4).

On August 9, 2017, Mr. Hamilton, through counsel, filed a motion to suppress any oral or written statements he made to law enforcement, arguing that the police obtained those statements in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution and Article I of the Ohio Constitution. (ECF No. 8-2, Exhibit 5). On October 2, 2017, the trial court denied Mr. Hamilton's motion to suppress, holding that the motion was untimely because Mr. Hamilton had not filed it within 35 days of his arraignment as required by Ohio Crim. R. 12(D). (ECF No. 8-2, Exhibit 7). The trial court noted that the basis for the motion to suppress would have been known to Mr. Hamilton no later than May 1, 2017,  but that he did not file his motion to suppress until four months later. The trial court also held that Mr. Hamilton had not attempted to establish good cause for his untimely filing and had not moved for an extension of time to file the motion to suppress.

The case proceeded to trial. Count Four (felonious assault) was dismissed prior to

3

verdict. (ECF No. 8-2, Exhibit 11). On November 7, 2017, the jury returned a verdict of not guilty on Counts One and Two (murder) but found him guilty of the lesser included offenses of reckless homicide and involuntary manslaughter. (ECF No. 8-2, Exhibit 11). The jury also found Mr. Hamilton guilty on the remaining counts. *Id*.

On November 17, 2017, the trial court sentenced Mr. Hamilton. (ECF No. 8-2, Exhibit 11). The trial court merged the convictions on Counts One through Three. The trial court sentenced Mr. Hamilton to a term of eight years on Count Three (felonious assault), plus an additional term of three years on the firearm specification; three years on Count Five (having weapons while under disability); and eighteen months on Count Six (receiving stolen property), plus an additional term of one year for the firearm specification. The trial court ordered that the sentences for the two firearm specifications would merge. The trial court also ordered that Mr. Hamilton's sentences on Counts Three, Five, and Six would run consecutively to each other and to the firearm specification, for a total aggregate sentence of 15 years and six months.[2]

**B. Direct Appeal**

On December 4, 2017, Mr. Hamilton, through new counsel, timely filed a notice of appeal to the Ninth District Court of Appeals. (ECF No. 8-2, Exhibit 13). In his appellate brief, Mr. Hamilton raised the following assignments of error:

1. The trial court erred when it failed to grant a mistrial after the jurors were improperly influenced.

2. The trial court erred in sentencing Mr. Hamilton to the maximum sentences.

---

[2] On December 15, 2017, the trial court entered an amended judgment entry of conviction and sentence, which did not substantively change Mr. Hamilton's sentence. (ECF No. 8-2, Exhibit 12).

4

3. The trial court erred in failing to merge Mr. Hamilton's sentences for having weapons while under disability and felonious assault as they are allied offenses of similar import within the meaning of R.C.2941.25.

4. The verdict is against the manifest weight of the evidence to the detriment of Mr. Hamilton.

5. The trial court erred in failing to suppress statements.

6. The court erred in improperly relying on unsubstantiated allegations of other improprieties in which the prosecutor improperly presented in the sentencing of Mr. Hamilton.

(ECF No. 8-2, Exhibit 15). In his fifth assignment of error, Mr. Hamilton argued that the trial court should have permitted him to file an untimely motion to suppress in the interest of justice. Mr. Hamilton did not raise any argument that he had received the ineffective assistance of trial counsel because his trial counsel failed to file a timely motion to suppress or to seek an extension of the deadline to do so.

On May 13, 2019, the Ninth Appellate District affirmed Mr. Hamilton's sentence. (ECF No. 8-2, Exhibit 17). On June 19, 2019, Mr. Hamilton, acting *pro se*, filed a notice of appeal to the Ohio Supreme Court. (ECF No. 8-2, Exhibit 18). In his memorandum in support of jurisdiction, Mr. Hamilton raised the following propositions of law:

1. The trial court erred when it failed to grant a mistrial after the jurors were improperly influenced. U.S. 14th Amendment.

2. The trial court erred in sentencing the Defendant in violation of U.S. 14th Amendment.

3. Trial Court erred in failing to merge sentences that were allied offenses. 14th Amendment U.S.C.

4. The verdict was against the weight of the evidence. In violation of 14th Amendment U.S.C.

5. Trial court erred in failing to suppress statements. Violating 14th Amendment U.S.C.

6.  Trial court erred in improperly relying on unsubstantiate [*sic*] allegations of other improprieties which the prosecutor improperly presented at sentencing. 14th Amendment U.S.C.

(ECF No. 8-2, Exhibit 19). On August 6, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (ECF No. 8-2, Exhibit 21).

**C.  Rule 26(B) Application to Reopen Appeal**

On August 6, 2019, Mr. Hamilton filed an application in the Ninth Appellate District to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 8-2, Exhibit 22). Mr. Hamilton argued that he was denied the effective assistance of appellate counsel because his appellate counsel raised the suppression issue as a challenge to the trial court's decision rather than arguing that his trial counsel was ineffective in failing to timely file a motion to suppress or to seek an extension of the deadline to file the motion.

On October 21, 2019, the Ninth Appellate District denied Mr. Hamilton's application to reopen. (ECF No. 8-2, Exhibit 26). On December 17, 2019, Mr. Hamilton sent a letter to the Ninth Appellate District Clerk, stating that he had not been notified of any ruling on his application and asking for an update on the status of the application. (ECF No. 8-2, Exhibit 27). On December 30, 2019, the Ninth Appellate District issued a Magistrate's Order, stating that Mr. Hamilton's application had been denied on October 21, 2019, and that the clerk mailed copies of the journal entry to the parties on October 22, 2019. (ECF No. 8-2, Exhibit 28).

The state court record filed by the Warden contains no additional records regarding Mr. Hamilton's Rule 26(B) application. In connection with his petition, however, Mr. Hamilton submitted a sworn affidavit in which he states that, after he received the letter from the clerk of the Ninth Appellate District in December 2019, he prepared and attempted to file an appeal to the Ohio Supreme Court. (ECF No. 1, PageID # 10). Mr. Hamilton also attached

6

a January 13, 2020 letter from the clerk of the Ohio Supreme Court to his habeas petition, in which the clerk stated that Mr. Hamilton's appeal of the Ninth Appellate District's ruling had not been accepted for filing because Mr. Hamilton had not filed his appeal within the time permitted under rules. (ECF No. 1, PageID #14).

### D. Federal Habeas Action

On September 14, 2020, Mr. Hamilton, acting *pro se*, filed his 28 U.S.C. § 2254 habeas petition. (ECF No. 1). Mr. Hamilton's habeas petition raises a single ground for relief:

> 1. Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution, when appellate counsel failed to raise clear, obvious, and prejudicial error that appears on the face of the record.

*Id*. In particular, Mr. Hamilton argued that his appellate counsel was constitutionally ineffective in failing to argue that his trial counsel had provided ineffective assistance of counsel by not seeking to suppress statements he made to the police within the time allowed under Ohio law and by failing to seek an extension of the deadline to file a motion to suppress. The Warden filed an answer/return of writ on April 12, 2021. (ECF No. 8). Mr. Hamilton filed a traverse on May 20, 2021. (ECF No. 10).

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. Jurisdiction

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The

Lorain County Court of Common Pleas sentenced Mr. Hamilton, and the Court takes judicial notice that Lorain County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Hamilton's § 2254 petition.

### B.  Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment.

8

*Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

The Sixth Circuit has developed a four-part test to determine whether a procedural default precludes a federal court from reaching a petitioner's claim: (1) whether there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with; (2) whether the state court "actually enforced" the state procedural rule; (3) whether the rule is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the procedural rule and actual prejudice from the alleged constitutional error. *Barton v. Warden, Southern Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). These factors are commonly known as the "*Maupin*" factors.

As the fourth *Maupin* factor indicates, if a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

**C.  Cognizable Federal Claim**

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

**D.  AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous—it must be "objectively unreasonable." *Id.*

11

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

12

## V. ANALYSIS

As noted above, Mr. Hamilton argues that he was denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments because appellate counsel failed to raise an ineffective assistance of trial counsel claim with respect to the motion to suppress. The Warden argues that Mr. Hamilton procedurally defaulted on his claim by failing to timely appeal the denial of his Rule 26(B) application. As discussed below, however, because the procedural default question would require the Court to resolve several factual issues that appear to be in dispute, I instead recommend that the Court deny Mr. Hamilton's habeas petition on the merits.

### A.  <u>Procedural Default</u>

The Warden argues that Mr. Hamilton procedurally defaulted on his ineffective assistance of appellate counsel claim because he did not fairly present the claim at all levels of the state court review process. Specifically, the Warden argues that, while Mr. Hamilton raised ineffective assistance of appellate counsel to the Ninth Appellate District in his Rule 26(B) application, he did not timely appeal the denial of that application to the Ohio Supreme Court. Mr. Hamilton does not dispute that he failed to file a timely appeal to the Ohio Supreme Court. Accordingly, I agree with the Warden that Mr. Hamilton has procedurally defaulted on his claim. *See Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (holding that petitioner must raise a claim at every stage of the state review process to avoid a procedural default).

Mr. Hamilton's procedural default can nonetheless be excused if he can demonstrate either both cause and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Mr. Hamilton argues that cause exists because he did not receive notice of the Ninth Appellate District's decision denying his Rule 26(B) application until after the deadline for him to appeal to the Ohio Supreme Court had

13

already passed. In support, Mr. Hamilton submitted a letter he sent to the Clerk of the Ninth

Appellate District on December 15, 2019 inquiring about the status of his petition. (ECF No.

1, PageID # 12). Mr. Hamilton also submitted a Legal Mail Log which, he asserts, shows that

he did not receive a copy of the Ninth Appellate District's decision at the time it was issued.

*Id*, at PageID # 13. Finally, Mr. Hamilton submitted records indicating that, after the Ninth

Appellate District Clerk informed him of the court's decision on December 23, 2019, he

promptly attempted to appeal the decision to the Ohio Supreme Court, which rejected his

appeal as untimely on January 13, 2020. *Id*. at PageID # 14.

Courts have recognized that a habeas petitioner's failure to receive timely notice of

an unfavorable state court decision may potentially constitute cause to excuse a procedural

default. *See, e.g.*, *Nicholson v. Morgan*, No. 3:20-cv-2545, 2022 WL 4072473, at \*9 (N.D.

Ohio Aug. 11, 2022), *report and recommendation adopted*, 2022 WL 4017507 (noting that

petitioner "could arguably establish cause to excuse his procedural default because notice of

the March 25, 2019 order denying his Rule 26(B) application to reopen was not mailed to him

directly and he did not receive notice of the decision until long after the 45-day window within

which to appeal to the Ohio Supreme Court"); *Brown v. Miller*, No. 4:16 CV 600, 2017 WL

10574328, at \*11 (N.D. Ohio Oct. 30, 2017), *report and recommendation adopted*, 2018 WL

5023745 (concluding that petitioner had potential cause to excuse procedural default where

petitioner asserted that he was unaware of court of appeals decision); *Kirby v. Scott*, No. 5:17

CV 1749, 2019 WL 3947269, at \*9 (N.D. Ohio June 24, 2019), *report and recommendation

adopted*, 2019 WL 3946175 (holding that "[t]aking petitioner at his word . . . he can show

cause for his procedural default" where appellate counsel failed to timely inform him of

14

appellate court's decision).[3]

However, the Ohio courts did not address on the merits the question of whether Mr. Hamilton received a copy of the Ninth Appellate District's decision when it was issued. Accordingly, "addressing the procedural default would entail adjudicating [Mr. Hamilton's] claim that he did not actually receive timely notice of the appellate decision." *Smith v. Gansheimer*, No. 4:10 CV 2836, 2012 WL 6649198, at *10 (N.D. Ohio Nov. 29, 2012), *report and recommendation adopted*, 2012 WL 6628260. Thus, "rather than having to determine what actually transpired concerning notice of the appellate decision or what [Mr. Hamilton's] legal obligations were, and thus making a finding as to whether the procedural default has been excused, I recommend directly adjudicating the ineffective assistance of appellate counsel claim with reference to the decision of the state appeals court that denied that claim." *Id.*; *see also Nicholson*, 2022 WL 4072473 at *9 (finding it "more appropriate to proceed to the merits" given uncertainty regarding whether petitioner established cause to excuse procedural default in light of petitioner's assertion that he did not receive timely notice of appellate decision) (citing cases).

### B. Merits

In his sole ground for relief, Mr. Hamilton asserts that he received ineffective assistance of appellate counsel in violation of the Sixth Amendment because his appellate counsel failed to challenge his trial counsel's effectiveness with respect to the suppression motion.

---

[3] It is not entirely clear whether the Ninth Appellate District sent a copy of the decision to Mr. Hamilton directly or to his former counsel. The Warden argues that, to the extent the decision was sent to Mr. Hamilton's former counsel and former counsel failed to forward it on, Mr. Hamilton cannot demonstrate cause to excuse the procedural default because a Rule 26(B) proceeding is a collateral proceeding to which a petitioner has no right to counsel. The Warden's argument turns on whether the decision was sent to Mr. Hamilton's former counsel or to Mr. Hamilton directly. As discussed, I recommend that the Court avoid the need to resolve such factual questions and instead proceed to the merits of the claim.

The right to effective assistance of counsel extends through the first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985). A petitioner claiming ineffective assistance of counsel must show that: (1) counsel's representation "fell below an objective standard of reasonableness," such that he was not performing as counsel guaranteed under the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Under the first prong, the petitioner must overcome the "strong[] presum[ption that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. For prejudice, the petitioner must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Strickland* standard is "extremely deferential" because "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Kelly v. Lazaroff*, 846 F.3d 819, 829 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). "[T]he goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather 'to ensure that the adversarial testing process works to produce a just result under the standards governing decision.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

Notably, it is well-settled that "the *Strickland* performance standard does not require an attorney to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). Thus, to show that appellate counsel was ineffective in raising one argument over another, "the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver*, 349 F.3d at 348 (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)).

In denying Mr. Hamilton's Rule 26(B) application, the Ninth Appellate District rejected Mr. Hamilton's ineffective assistance of appellate counsel argument on the merits. Where the state court reaches the merits of an ineffective assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d). *Perkins v. McKee,* 411 F. App'x 822, 828 (6th Cir. 2011). The Sixth Circuit has emphasized the double layer of deference that federal courts must give state courts in reviewing federal ineffective assistance of counsel claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. … An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. … Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Id*. (quoting *Harrington,* 131 S.Ct. 770, 786-88).

The Ninth Appellate District held the following in denying Mr. Hamilton's Rule 26(B) application:

"[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, at ¶ 62. "App.R. 26(B)(5) requires that the applicant show a 'genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.'" *State v. Williams*, 129 Ohio St.3d 19, 2011-Ohio-232, ¶ 5, quoting App.R. 26(B)(5). The Supreme Court of Ohio has stated that "[t]he two-pronged analysis found in [*Strickland*] is the appropriate standard to assess whether [an applicant] has raised a 'genuine issue' as to the ineffectiveness of appellate counsel in his request to reopen his appeal in the court of appeals under App.R. 26(B)(5)." *State v. Tenace*, 109 Ohio St.3d 451, 2006-Ohio-2987, ¶ 5; *See Strickland v. Washington*, 466 U.S. 668 (1984). An applicant must prove that his counsel was deficient for failing to raise the issues that he now presents and that there was a reasonable probability of success had counsel presented those claims on appeal. *Tenace* at ¶ 5. The applicant bears the burden of establishing that there was a "'genuine issue'" as to whether he has a "'colorable claim'" of ineffective assistance of counsel. *Id*. at ¶ 6. "*Strickland* charges us to 'appl[y] a heavy measure of deference to counsel's judgments,' * * * and to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id*. at ¶ 7, quoting *Strickland* at 691, 689.

Appellant argues that appellate counsel was ineffective for failing to assign as error ineffective assistance of trial counsel for failure to file a timely motion to suppress or a motion for extension of time. On direct appeal, appellate counsel unsuccessfully challenged the trial court's denial of the untimely motion to suppress. *See Hamilton* at ¶ 29-34. Appellant now broadly asserts that appellate counsel committed a "critical error," claiming the argument on direct appeal was "baseless and lacked merit." Without developing any meaningful argument in support of these conclusory statements, Appellant summarily concludes that the first prong of *Strickland* is thus satisfied.

Although appellate counsel chose to challenge the trial court's denial of the motion to suppress instead of trial counsel's failure to file that motion in a timely fashion, "[c]ounsel need not raise all nonfrivolous issues on appeal." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994). Some issues may have arguable merit, but are "sufficiently problematical that the refusal to raise them cannot be assailed as an unreasonable professional judgment." *Id*., quoting *Cunningham v. Henderson*, 725 F.2d 32, 36 (2d Cir.1984). "[I]t is * * * possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Appellant has not demonstrated how appellate counsel's performance was deficient.

Even assuming arguendo that counsel's performance was deficient, Appellant has not demonstrated a reasonable probability of success for this additional assignment of error. Appellant argues that he suffered prejudice because this Court, in determining his felonious assault conviction was not against the manifest weight of the evidence, relied on information that "should have been, and could have been, suppressed" by quoting a comment he made during his interrogation with police. *See Hamilton* at ¶ 26. This Court, however, relied on much more than this one quote—i.e., the entire

record—in determining that the jury could infer his state of mind from the surrounding circumstances and, ultimately, that his felonious assault conviction was not against the manifest weight of the evidence. *See id.* at ¶ 23-28. Consequently, we cannot say that Appellant suffered any prejudice.

(ECF No. 8-2, Exhibit 26).

Applying the doubly-deferential standard of review, the Ninth Appellate District did not err in rejecting Mr. Hamilton's ineffective assistance of appellate counsel claim. As the Ninth Appellate District noted, Mr. Hamilton's appellate counsel did raise the suppression issue on appeal, albeit as a challenge to the trial court's determination rather than the effectiveness of Mr. Hamilton's trial counsel. While Mr. Hamilton asserts that his appellate counsel advanced a "baseless" argument, he has not established that it was objectively unreasonable for appellate counsel to argue that the trial court erred rather than by arguing that Mr. Hamilton's trial counsel was ineffective. Rather, fairminded jurists could agree with the Ninth Appellate District's conclusion that appellate counsel's strategic choice of argument fell within the reasonable range of professional judgment, and I therefore recommend that the Court deny Mr. Hamilton's petition.

Even assuming that appellate counsel's performance fell below that an objective standard of reasonableness, Mr. Hamilton has not demonstrated a reasonable probability that the outcome of his appeal would have been different had his appellate counsel raised an ineffective assistance of trial counsel claim. As an initial matter, I must give deference to the Ninth Appellate District's determination that the evidence was sufficient to support a conviction even without considering the contested statements from Mr. Hamilton's interrogation. *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009) (noting the "double layer of deference" that a habeas court must apply to a state court determination regarding a sufficiency of the evidence challenge). Moreover, Mr. Hamilton has not established a

19

reasonable probability that he would have prevailed on the suppression motion had his trial counsel timely filed it, and thus also has not shown a reasonable probability that the outcome of his appeal would have been different had his appellate counsel raised an ineffective assistance of trial counsel argument.

The Fifth Amendment provides in relevant part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself ." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that a defendant may waive his right to remain silent so long as the defendant makes the waiver "voluntarily, knowingly and intelligently." *Id*. at 444. Before interrogating Mr. Hamilton, the police read Mr. Hamilton his *Miranda* rights and confirmed that he understood them. (ECF No. 8-2, Exhibit 22, Transcript of October 25, 2016 Interrogation 3:2-19). Mr. Hamilton does not dispute that he waived his *Miranda* rights and does not argue that his waiver was involuntary. He argues, however, that his Fifth Amendment rights were nonetheless violated because he subsequently invoked them on multiple occasions throughout the interrogation.

In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court held that it is "inconsistent with *Miranda* and its progeny for the authorities, at their insistence, to reinterrogate an accused in custody if he is clearly asserted his right to counsel." *Id*. at 485. Thus, "having expressed his desire to deal with the police only through counsel, [an accused] is not subject to further interrogation until counsel has been made available to him, unless the accused has himself initiated further communication, exchanges, or conversations with the police." *Id*. at 484-85.

"The applicability of the 'rigid prophylactic rule' of *Edwards* requires courts to 'determine whether the accused *actually invoked* his right to counsel." *Davis v. United States*,

512 U.S. 452, 458 (1994) (quoting *Smith v. Illinois*, 469 U.S. 91, 95 (1979)). To invoke the right to counsel, "the suspect must unambiguously request counsel." *Id.* at 459. "The inquiry is objective." *England v. Hart*, 970 F.3d 698, 707 (6th Cir. 2020). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be involving the right to counsel, [the Supreme Court's] precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459. The Supreme Court has held that the same standards apply to an accused's invocation of the right to remain silent. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

While Mr. Hamilton argues that he clearly invoked his Fifth Amendment rights during his interrogation, he caveated many of his statements with equivocal language. Early in the interrogation, for example, he told the interrogating officers, "I guess from what you just told me, maybe I should just keep my mouth shut for right now." (ECF No. 8-2, Exhibit 22, Tr. 5:25-6:1). Mr. Hamilton also said that he had "been advised of a legal attorney, you know" and that "I guess maybe, maybe I should shut up, you know." *Id.* at 12:21-13:2. Later in the interrogation, he similarly said, "I think I should just shut up for right now." *Id.* at 15:1-2. And, while Mr. Hamilton did expressly reference the Fifth Amendment at one point in the interrogation, he similarly prefaced his statement with the words, "I guess," stating, "I guess I'm going to plead the fifth, okay. I mean, I don't know what else to say, you know. I don't want to say nothing you know." *Id.* at 16:8-12. Moreover, without any prompting, Mr. Hamilton continued: "I'm not – I'm not – I'm not – I'm not happy. I'm embarrassed. Oh, holy cow. I think that's all I want to say right now. You know, I'm not a happy person." *Id.* at 16:10-13. When the officers asked why he was embarrassed, Mr. Hamilton substantively

responded to the officers' questions without clearly invoking his rights.

As both the Supreme Court and the Sixth Circuit have held, conditional words and phrases such as "maybe," "I think," and "I guess" are not unequivocal assertions of the right to counsel. *See Davis*, 512 U.S. at 462 (holding that defendant's statement, "[m]aybe I should talk to a lawyer" was not an unambiguous invocation of the right to counsel); *England*, 970 F.3d at 707-08 (holding that defendant did not clearly invoke right to counsel by stating, "I guess you'll just have to go on and lock me up then and call my lawyer") (citing cases).

It is true that a few of Mr. Hamilton's statements arguably invoked his right to remain silent in more unequivocal language. *See, e.g.*, ECF No. 8-2, Exhibit 22, Tr. 17:9 ("I don't – I don't want to say no more"); *Id.* at 17:22 ("I'm just going to shut up"). However, context is crucial in assessing whether a defendant clearly invoked his right to counsel. *See England*, 970 F.3d at 707 ("we cannot simply sever his purported request from the remainder of the sentence in question"); *Wesson v. Shoop*, 17 F.4th 700, 706 (6th Cir. 2021) (holding that defendant did not clearly invoke right to remain silent by saying "I ain't got nothin' to say to y'all" because "context matters" and surrounding context did not make clear that defendant was refusing to answer all questions); *McKinney v. Hoffner*, 830 F.3d 363, 373 (6th Cir. 2016) ("Standing alone, McKinney's first statement may have been an unequivocal request for counsel. But McKinney's statement was not made in isolation."). Viewing Mr. Hamilton's statements in context, fairminded jurists could dispute whether Mr. Hamilton clearly invoked the right to remain silent through potentially-ambiguous phrases such as "I don't want to say no more" and "I'm just going to shut up."

Because the strength of Mr. Hamilton's *Miranda* argument is uncertain, the Ninth Appellate District's holding that Mr. Hamilton failed to demonstrate prejudice as a result of

his appellate counsel's alleged ineffectiveness is one with which fairminded jurists could reasonably agree. Thus, even assuming Mr. Hamilton's appellate counsel acted below an objective standard of reasonableness, the Ninth Appellate District did not act contrary to or unreasonably apply governing law in rejecting Mr. Hamilton's ineffective assistance of appellate counsel claim. I therefore recommend that the Court deny Mr. Hamilton's habeas petition on the merits.

## VI. RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A. <u>Legal Standard</u>

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; see also 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

**B. <u>Analysis</u>**

Mr. Hamilton has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

**VII. RECOMMENDATION**

For the foregoing reasons, I RECOMMEND that the Court DENY Mr. Hamilton's petition for a writ of habeas corpus under 28 U.S.C. § 2254. I also recommend that the Court not grant him a certificate of appealability.

Dated:  October 13, 2023

*s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of**

**good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79

25

(6th Cir. 2019).